Nicholas **KALYVAKIS**, Libelant,

v.

**THE T.S.S. OLYMPIA**, her engines, boilers, tackle, etc., and Transatlantic Shipping Co., Ltd., Respondents.

United States District Court
S. D. New York.
Feb. 8, 1960.

Foley & Martin, New York City, for libelant. James S. Reardon, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for respondents. William D. Powers, Vernon S. Jones, New York City, of counsel.

EDWARD WEINFELD, District Judge.

These are cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The parties acknowledge that there are no disputed issues of fact and that the matter is ripe for disposition under the Rule.[1] The question to be resolved is whether libelant or respondent is entitled to $3,010 in currency found by libelant on board the respondent's vessel.

Libelant was employed as an assistant steward aboard the T.S.S. Olympia, a passenger vessel owned by the respondent. He is a Greek national. Respondent is a Greek corporation with an office and place of business within the jurisdiction of this Court. The Olympia is documented under the laws of Liberia and flies the Liberian flag.

On June 6, 1956, while the vessel was moored at a pier in the North River, New York City, receiving passengers for an imminent sailing, the libelant found $3,010 in United States currency on the floor of a public men's room on the upper deck. The room was accessible to all passengers, their guests, visitors and ship's personnel. The bills, which were scattered on the floor of the washroom, were found shortly before visitors and guests were required to disembark and return to the pier. After the vessel had sailed the libelant deposited the money with the chief steward to be held for the true owner should he make any claim to it. Although more than three years have elapsed no claim has been made by any person for the funds. The libelant now asks that the money be returned to him. The respondent resists, contending that it, as his employer, is entitled thereto. The respondent contends that since the ship flies the flag of Liberia this Court should look to the laws of that country to determine the rights of the parties. Under its interpretation of a Liberian statute, respondent argues that the Liberian courts, in the circumstances here presented, would apply the common law of England and that under English law it, and not libelant, is entitled to the found money.[2]

---

1. Such a remedy is available in admiralty. Longbottom v. American Dredging Co., D.C.E.D.Pa.1958, 159 F.Supp. 296, 297; Infante v. Moore-McCormack Lines, Inc., D.C.E.D.Pa.1950, 93 F.Supp. 239. It is especially appropriate in this case where there is no dispute as to the facts and where the parties agree to its use. Murphy v. Light, 5 Cir., 1954, 211 F.2d 824, 825.

2. The respondent's position is that since the Liberian Code contains no specific provision dealing with the disposition of lost property, section 40 of Title 16 of the Liberian Code of Laws of 1956 is applicable. According to respondent, this provides: *"Non-statutory law derivation. * * * Except as modified by laws now in force and those which may hereafter be enacted and by the Liberian*

■■ Before reaching the merits, a threshold question presents itself as to whether the Court shall take jurisdiction of this action. While admiralty courts have jurisdiction of suits of a maritime nature between foreigners, the exercise of such jurisdiction is discretionary.[3] Generally jurisdiction will be favorably exercised unless special circumstances indicate that justice would be better served by declining it.[4] The Court here has jurisdiction both of the respondent and the vessel. The vessel frequently calls at the port of New York. While it may, on scheduled Mediterranean cruises, call at Greek ports, it has apparently never docked in Liberia. Indeed other than the fact that it is documented under the laws of Liberia it appears to have no contacts there. The money was found on the vessel while it was moored in this port. Witnesses who may have knowledge of the facts are or will be available here. Finally, both parties agree that the matter can be litigated most economically and expeditiously within this jurisdic-

tion, and their assent, in the absence of countervailing considerations of public policy, while not necessarily controlling, should be given substantial weight.[5] Upon a consideration of all the circumstances the Court concludes that this is a case in which jurisdiction should be retained.

■ We now turn to the choice of law issue. Although the parties are both nationals of Greece, neither has pleaded the law of Greece nor urged its adoption. The respondent presses the Court to apply the law of Liberia. It relies upon the doctrine known as "the law of the flag" and the case of Lauritzen v. Larsen, 1953, 345 U.S. 571, 73 S.Ct. 921, 929, 97 L.Ed. 1254. However, neither is dispositive of the issue.

While it has often been said that "a merchant ship is part of the territory of the country whose flag she flies," this has been described by the Supreme Court as "a figure of speech, a metaphor" which "is chiefly applicable to ships on the high seas, where there is no terri-

common law, the following shall be, when applicable, considered Liberian Law: (a) the rules adopted for chancery proceedings in England, and (b) the common law and usages of the courts of England and of the United States of America, as set forth in case law and in Blackstone's and Kent's *Commentaries* and in other authoritative treatises and digests." Respondent eliminates Liberian common law on the ground that no cases have been noted thereunder. It adopts as the next choice the common law and usages of the courts of England in preference to those of the United States on the theory that England is referred to before the United States. The reason for the preference is not persuasive since it would have been a comparatively simple matter to have inserted a subdivision (c) before "the United States of America" if it were intended to give preference to English common law.

3. The Belgenland, 1885, 114 U.S. 355, 5 S.Ct. 860, 29 L.Ed. 152; Charter Shipping Co. v. Bowring, Jones & Tidy, Ltd., 1930, 281 U.S. 515, 50 S.Ct. 400, 74 L.Ed. 1008; Canada Malting Co. v. Paterson Steamships, Ltd., 1932, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837.

4. The Belgenland, 1885, 114 U.S. 355, 367, 5 S.Ct. 860, 29 L.Ed. 152; Kloeckner Reederei Und Kohlenhandel, G.M. B.H. v. A/S Hakedal, 2d Cir., 210 F.2d 754, appeal dismissed, 1954, 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633; Motor Distributors, Ltd., v. Olaf Pedersen's Rederi A/S, 5 Cir., 1956, 239 F.2d 463, certiorari denied, 1957, 353 U.S. 938, 77 S.Ct. 816, 1 L.Ed.2d 760. Compare Canada Malting Co. v. Paterson Steamships, Ltd., 1932, 285 U.S. 413, 420, 52 S.Ct. 413, 76 L.Ed. 837; Charter Shipping Co. v. Bowring, Jones & Tidy, Ltd., 1930, 281 U.S. 515, 518, 50 S.Ct. 400, 74 L.Ed. 1008; The Maggie Hammond, 1869, 76 U.S. (9 Wall.) 435, 457, 19 L.Ed. 772.

5. Cf. Mason v. Ship Blaireau, 1804, 6 U.S. (2 Cranch) 240, 264, 2 L.Ed. 266, where Chief Justice Marshall stated: "On weighing the considerations drawn from public convenience, those in favor of the jurisdiction, appear much to overbalance those against it, and it is the opinion of this court, that, whatever doubts may exist in a case, where the jurisdiction may be objected to, there ought to be none where the parties assent to it."

torial sovereign; and as respects ships in foreign territorial waters it has little application beyond what is affirmatively or tacitly permitted by the local sovereign." [6]

Thus we are left with the same basic question whether upon the facts in this case an American court will adopt a foreign law as its own in determining the rights of the parties. Lauritzen v. Larsen, upon which respondent relies to obtain the application of Liberian law, was an action by a foreign seaman under the Jones Act, 46 U.S.C.A. § 688. There the libelant and respondent were Danish citizens; the ship was of Danish flag and registry. The only United States contact was the signing of articles in New York City. These provided that the rights of crew members would be governed by Danish law. The libelant was injured in Havana, Cuba. The Court held that there was no jurisdiction under the Jones Act when the only United States contact was limited to the signing of the articles. In holding the Act inapplicable, the law of the flag was but one of the factors which was taken into account. The Court specified certain criteria to be considered in deciding the choice of law issue. These included the following: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured seaman; (4) allegiance of the shipowner; (5) place of contract; (6) inaccessibility of foreign forum; (7) the law of the forum. No one of these factors was controlling but Mr. Justice Jackson discussed the weight to be accorded to each.

Lauritzen was followed by Romero v. International Terminal Operating Co., 1959, 358 U.S. 354, 79 S.Ct. 468, 3 L. Ed.2d 368. There the claim was by a foreign seaman under the general maritime law and the Jones Act. The only

United States contact was the occurrence of the injury in American waters. The Court held that neither the Jones Act nor general maritime law was applicable to the claims against the foreign shipowner. Again the law of the flag was but one of the factors which led to the holding. Stating that the "broad principles" of choice of law laid down in Lauritzen, "were intended to guide courts in the application of maritime law generally," the Court emphasized that "the similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal injury, admit of no rational differentiation of treatment for choice of law purposes." [7] The emphasis in both Lauritzen and Romero was upon the application of "those principles of choice of law that are consonant with the needs of a general federal maritime law." [8] The Court, in Romero, made it clear that "the controlling considerations are the interacting interests of the United States and of foreign countries," [9] in the determination of which courts were required to give due regard to the relevant factors enumerated in the Lauritzen case and the weight to be accorded each.

While these cases set up the guideposts for the courts in deciding the vexing issues which arise in matters pertaining to foreign seamen who seek redress in our courts, neither is controlling here. Both of them involved maritime torts. This case presents a problem involving a claim to personal property. Essentially it presents no problem typical of, or peculiar to, vessels or that is maritime in nature.

In comparing the instant case to Lauritzen and Romero still other differences become evident. The litigants in those cases were nationals of the country whose flag the ship flew. Redress was available to the libelant seamen against the shipowners right here in New York through

6. Cunard Steamship Co. v. Mellon, 1923, 262 U.S. 100, 123, 43 S.Ct. 504, 507, 67 L.Ed. 894.

7. 358 U.S. at 382, 79 S.Ct. at 485.

8. Ibid. Lauritzen v. Larsen, 345 U.S. 571, 581–582, 73 S.Ct. 927.

9. 358 U.S. at 383, 79 S.Ct. at 486.

the consulates of their countries.[10] In this case, however, the law which respondent urges the Court to adopt is that of a country with which neither libelant nor respondent has any ties. The only connection which Liberia has with this case is that the T.S.S. Olympia was registered there. While there appears to be a stronger argument for the application of Greek law, neither side, as already noted, urges its adoption and it will not be considered.[11] Neither Liberia, nor Greece for that matter, is a party to a United States consular convention giving foreign consuls in the United States authority to decide shipboard controversies. The single contact with Liberia is that the vessel is documented there. Otherwise all significant events bearing upon the claim occurred within this district. The money was found while the Olympia was docked at a pier in Manhattan. The ship and the washroom in which it was discovered were open to more than 1,000 boarding passengers, 1,500 visitors, and crew members. Any one of these persons may have left the money, which was United States currency. The fact that it has been unclaimed for three years lends support to an inference that it was lost by one whose contacts with the ship were minimal rather than by one who was either a passenger or a crew member.

The disposition of this case involves no matter of internal ship's discipline or rights and duties of crew to ship. It is primarily a matter of local concern rather than of foreign commerce. To accept respondent's contention and adopt Liberian law merely because it is the law of the flag, would be a flagrant example of the kind of "mechanical application of a doctrine" warned against by the Supreme Court in the Romero case.[12] Under the circumstances of this case the appropriate law is American law and that is what the Court must apply.

■■ Research by Court and counsel has failed to bring to light any controlling case under the general maritime law of the United States. In the absence of an applicable rule the Court may look to state law.[13] The most appropriate state law is that of New York where the vessel was moored when the money was found. Under New York law the money here in question would be considered lost [14] or abandoned.[15] And since it was found in a public place the finder would be entitled to it against all but the true owner.[16] This is so regardless of the

---

10. Lauritzen v. Larsen, 345 U.S. at 590, 73 S.Ct. at 932; Romero v. International Terminal Operating Co., 358 U.S. at 383, 79 S.Ct. at 486.

11. Walton v. Arabian American Oil Co., 2 Cir., 233 F.2d 541, 544, certiorari denied, 1956, 352 U.S. 872, 77 S.Ct. 97, 1 L.Ed.2d 77.

12. 358 U.S. at 383, 79 S.Ct. at 486.

13. See Wilburn Boat Co. v. Fireman's Fund Ins. Co., 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L Ed. 337; Romero v. International Operating Terminal Co., 1959, 358 U.S. 354, 373-374, 79 S.Ct. 468; Just v. Chambers, 1941, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903.

14. " 'To lose is not to place or put anything carefully and voluntarily in the place you intend and then forget it, it is casually and involuntarily to part from the possession; and the thing is then usually found in a place or under circumstances to prove to the finder that the owner's will was not employed in placing it there.' " Foulke v. New York Consolidated R. R. Co., 1920, 228 N.Y. 269, 273-274, 127 N.E. 237, 238, 9 A.L.R. 1384.

15. "The abandonment of property is the relinquishing of all title, possession or claim to or of it—a virtual intentional throwing away of it." Id. at 273, 127 N.E. at 238.

16. " * * * custody of a lost chattel belongs to the finder when the finding occurs in a place open to the public whereas if the finding occur in a private place, the owner of that place and not the finder is entitled to such custody." Cohen v. Manufacturers Safe Deposit Co., 1948, 297 N.Y. 266, 270, 78 N.E.2d 604, 606.

fact that the money was found during the course of libelant's employment.[17] The New York view is in accord with the weight of American authority which tends to reject any master-servant exception to the law of finders.[18]

The case of Hume v. Elder, 2d Dep't 1917, 178 App.Div. 652, 165 N.Y.S. 849, mentioned by respondent does not require a contrary conclusion. That was a suit for damages against an employer for injuries received at the hands of his employee. The part of the Court's opinion which touches on found property is not only dictum but does not support respondent's position. It states that:

> "* * * The fact that he [the servant] found the pail while out upon such business [that of his masters] did not imply that the masters had any property right to a pail found by the driver in a public street * * *. On the other hand, such a finding of the pail would have vested the driver with a property right thereto against every one but the owner." Id. at 653, 165 N.Y.S. at 850.

The Court is satisfied that libelant is entitled to the $3,010. Libelant's motion for summary judgment is therefore granted.

Settle order on notice.

"Abandoned property is owned by him who takes it into his ownership." Foulke v. New York Consolidated R. R. Co., 1920, 228 N.Y. 269, 273, 127 N.E. 237, 238.

17. It may be observed that while this Court's conclusion makes it unnecessary to consider English law, it is far from clear that even under it respondent would be entitled to the lost money. The authorities relied upon by respondent are dictum in Hannah v. Peel [1945] 1 K.B. 509 and a statement in Salmond on Jurisprudence (9th ed.). Other English cases advanced by respondent indicate significant differences from the case at bar in that the finding occurred in a private place as distinguished from a place open

to the public. The New York State Court of Appeals has referred to these authorities as "inconclusive." See Cohen v. Manufacturers Safe Deposit Co., 1948, 297 N.Y. 266, 270, 78 N.E.2d 604, 606.

18. Hamaker v. Blanchard, 1879, 90 Pa. 377; Danielson v. Roberts, 1904, 44 Or. 108, 74 P. 913, 65 L.R.A. 526; Roberson v. Ellis, 1911, 58 Or. 219, 114 P. 100, 35 L.R.A.,N.S., 979; Toledo Trust Co. v. Simmons, 1935, 52 Ohio App. 373, 3 N.E.2d 661; In re Savarino, D.C. S.D.N.Y.1932, 1 F.Supp. 331; Restatement, Agency 2d § 388, comment d (1958); Reisman, Possession and the Law of Finders, 52 Harv.L.Rev. 1105, 1116–17 (1939).