**Jesus M. SANCHEZ a/k/a "El Cura", Carmelo Davila, Rene Feliciano, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. 91–1439 (JAF).**

United States District Court, D. Puerto Rico.

Nov. 20, 1991.

Antonio Córdova González, San Juan, P.R., for plaintiffs.

Miguel A. Fernández, Asst. U.S. Atty., Daniel F. López–Romo, U.S. Atty., District of Puerto Rico, San Juan, P.R., for defendant.

1. On November 1, 1990, Torres González was indicted on numerous counts in a multidefendant indictment now pending before Judge Cerezo in Criminal No. 90–370(CC).

2. Article 285 of the Civil Code provides:

    Hidden Treasure

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs Jesús M. Sánchez, Carmelo Dávila, and René Feliciano commenced this action seeking replevin of certain United States Currency which was the subject of a prior forfeiture proceeding pursuant to 21 U.S.C. § 881(a)(6). *See United States of America v. Approximately Forty Three Million Dollars in U.S. Currency, etc.,* Civil No. 90–1652(GG) (D.P.R. Aug. 6, 1990). Plaintiffs' claim is that the currency, allegedly discovered by them in barrels buried on land owned by indicted narcotics trafficker Ramón Torres González,[1] represents hidden treasure and that, as finders, they are entitled to at least half of the proceeds pursuant to Article 285 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 1116.[2]

Before the court is defendant United States of America's motion to dismiss pursuant to Fed.R.Civ.P. 12(b). In the alternative, defendant has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Because evidence outside the pleadings has been used to rule on the motions, we will decide the case under the rubric of Rule 56.

Based on the finding that plaintiffs failed to timely file a verified claim, they lack statutory standing to challenge the government's forfeiture of the property. Also, because plaintiffs do not have an ownership interest in the currency based on Puerto Rico law, they have no claim to the currency. Accordingly, we grant defendant's summary judgment motion and dismiss the action.

### I.

#### *Background*

The *res* which forms the basis of this action was allegedly discovered by plain-

Hidden treasures belong to the owner of the land on which they are found. Nevertheless, when the discovery is made by chance on property belonging to another, or to the Commonwealth of Puerto Rico or of the United States, one-half thereof shall be allowed to the finder.

31 L.P.R.A. § 1116.

tiffs sometime in late 1989 or early 1990 on a parcel of land in Barrio Espinosa, Dorado, Puerto Rico. This land was owned at the time by Ramón Torres González.

In 1990, a joint investigation by the Federal Bureau of Investigation ("FBI") and the Drug Enforcement Administration ("DEA") found that Torres González had been involved in the importation of cocaine from Colombia into Puerto Rico and the Continental United States. It was the proceeds from these drug transactions that constituted the "buried treasure" found on the property.

After commencement of the criminal action, the civil forfeiture action, No. 90–1652(GG), was commenced. In an Affidavit of Publication filed with the court on June 6, 1990, the government attested that proper notice had been caused to be published three times in a newspaper of general circulation in Puerto Rico, giving potential claimants the opportunity to file notices of claims with the court.

Plaintiffs Dávila and Feliciano filed no claims seeking recovery of the currency in the forfeiture action. Plaintiff Sánchez did file an answer and a counterclaim as to certain properties subject to forfeiture. The government moved to strike Sánchez' filings because of his failure to timely file his verified claim pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.[3] In an Order filed July 20, 1990 (Docket Document No. 4, *Exhibit 1* at 2–4), Judge Gierbolini granted the government's motion to strike plaintiff Sánchez' answer.

Subsequently, in two Partial Decrees filed August 7, 1990 and January 8, 1991, respectively, the court ordered forfeited, *inter alia*, both the Barrio Espinosa property and the currency contained in the twenty-two barrels.

Plaintiffs commenced the present collateral action on April 9, 1991.

**II.**

*Discussion*

In substance, plaintiffs are contesting the forfeiture of the currency to the government. They allege that, as finders of lost treasure, they have acquired a possessory interest sufficient to entitle them to at least half the amount of the monies forfeited. Also, they argue that, as individuals not connected to any illegal activity, they fall within the "innocent owner" exception to 21 U.S.C. § 881(a)(6) and, once their possessory interest is established, this defense should defeat forfeiture by the government. For a number of reasons, we disagree.

### A. *Supplemental Rule C(6)*

■ First of all, plaintiffs Dávila and Feliciano did not comply with Supplemental Rule C(6) by filing a verified claim in the prior forfeiture action in the principal forfeiture case. The filing of a verified claim pursuant to Supp. Rule C(6) is necessary to confer statutory standing upon a claimant in a forfeiture action. *U.S. v. One Dairy Farm*, 918 F.2d 310, 311–13 (1st Cir.1990); *U.S. v. Currency $267,961.07*, 916 F.2d 1104, 1108 (6th Cir.1990); *U.S. v. One Urban Lot Located at 1 Street A–1*, 885 F.2d 994, 999–1001 (1st Cir.1989); *Mercado v. U.S. Customs Service*, 873 F.2d 641, 645 (2d Cir.1989); *U.S. v. $175,918.00 in United States Currency*, 755 F.Supp. 630, 632–33 (S.D.N.Y.1991) ("This rule is designed to provide the government with timely notice of a claimant's interest in contesting the forfeiture and, by requiring a sworn claim, to deter the filing of false claims."); *United States v. One 1978 BMW*, 624 F.Supp. 491, 492 (D.Mass.1985). Where a party completely disregards the requirements of Supp. Rule C(6), dismissal of the claim by the district court should normally result. *One Dairy Farm*, 918 F.2d at 312; *One Urban Lot*, 885 F.2d at 998. Here, Dávila

---

**3.** Supp. Rule C(6) provides in relevant part:
   The claimant of property that is subject of an action in rem shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim. The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action.

and Feliciano have come forward with no allegation or with any other proof that they ever filed a claim in the earlier forfeiture action or that the final forfeiture decree in the main case, No. 90–1652(GG), is invalid. Therefore, they lack statutory standing to challenge the forfeiture.

■ Plaintiff Sánchez' position is somewhat different vis-a-vis the issue of Supp. Rule C(6) compliance. In Judge Gierbolini's July 20, 1990 Order, the following dates were specified. On May 17, 1990, Sánchez was served with process. Therefore, under Supp. Rule C(6), he had until May 27, 1990 to file his claim. Sánchez' answer and counterclaim were filed on May 30, 1990. On June 13, 1990, the government moved to strike Sánchez' answer on the ground that no verified claim had been filed. The court granted the government's motion on this basis.

Here, we note that the First Circuit has instructed district courts, in the civil forfeiture context, to follow the "time-honored admiralty principle that pleadings and procedural practices should be applied liberally." *One Urban Lot*, 885 F.2d at 1001; *United States of America v. One Parcel of Real Property with Buildings, Appurtenances and Improvements Known as 116 Emerson Street, Located in the City of Providence, Rhode Island*, 942 F.2d 74, 77–78 (1st Cir.1991). In *One Parcel*, the appellate court opined that, in order that cases be decided on the merits, district courts should exercise their "discretion to grant additional time for the filing of a claim … when the goals underlying the time restrictions … are not thwarted." 942 F.2d 74, 77 (quoting *United States v. 1982 Yukon Delta Houseboat*, 774 F.2d 1432, 1436 (9th Cir.1985). After considering both the mitigating factors and the extent to which the government would be prejudiced by an untimely-filed claim, the court in *One Parcel* went on to allow claimant to proceed to contest the forfeiture on the merits despite both an untimely and an unverified Supp. Rule C(6) claim. *Id.* at 78. Also in *One Urban Lot*, our circuit has held that "where the claimant timely filed a *verified* answer containing all the information required in the claim, the answer may be deemed to have fulfilled the function of a claim in terms of establishing the owner's standing." *One Urban Lot*, 885 F.2d at 999; *One Dairy Farm*, 918 F.2d at 313.

Here, the record fails to show whether any mitigating factors existed which might have excused Sánchez' failure to file a verified claim. We do note that, leaving aside the obvious and difficult *res judicata* issue,[4] at least three of the four mitigating factors found in *One Parcel*, 942 F.2d at 78, are not present here. First, unlike the claimant in *One Parcel*, here Sánchez was served in the first proceeding. Also, whereas a trial on the merits had not yet been held when the claimant intervened, here the court has ruled and the properties have been forfeited. A third consideration is that in this case, unlike the situation found in *One Parcel*, ordering the forfeiture action to be relitigated would most certainly prejudice the government. Finally, in *One Parcel*, the court noted that the claimant actively pursued the litigation once the claim was filed. Here there is no evidence before this court that Sánchez either moved the court for reconsideration of its order striking his answer or timely filed an appeal. Therefore, regardless of what transpired in the earlier action, we think that the lack of mitigating factors and the extent of potential government prejudice distinguishes the present case from *One Parcel* and we find that the holding of *One Dairy Farm* mandates the dismissal of Sánchez' claim for failure to file a verified claim in compliance with Supp. Rule C(6).

## B. *Merits of Plaintiffs' Claim*

Even if we were to find that plaintiffs could be deemed to have complied with the requisite filing of their verified claims

---

**4.** The government has raised the issue and argues that any claim Sánchez might have is barred by his participation in the prior action. While we do not base our decision to dismiss on this ground, we note that the record indicates that Sánchez had the opportunity to litigate the forfeiture issue in the earlier action. The fact that he failed to comply with a statutory prerequisite should not, in and of itself, normally bar the application of the principle of *res judicata*. *See Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

(which we do not), their claim must fail on the merits.

■ As a preliminary matter, the court must examine whether the complaint alleges a sufficient interest in the seized property. Before a potential claimant can contest a forfeiture, there must be a sufficient claim of interest in the property. *One Parcel*, 942 F.2d at 78–79; *Mercado*, 873 F.2d at 644–45; *U.S. v. One Parcel of Real Property with Bldgs., etc.*, 764 F.Supp. 9, 12–13 (D.R.I.1991); *United States v. One Rural Lot*, 739 F.Supp. 74, 77–78 (D.P.R.1990); *U.S. v. All That Lot of Ground Known as 2511 E. Fairmount Ave.*, 722 F.Supp. 1273, 1279 (D.Md.1989); *United States v. Miscellaneous Jewelry*, 667 F.Supp. 232, 235–36 (D.Md.1987), *aff'd sub nom One 1985 Nissan*, 889 F.2d 1317 (4th Cir.1989) (en banc). "The term 'owner' should be broadly construed to encompass any person with a recognizable legal or equitable interest in the property seized." *United States v. $47,875.00 in U.S. Currency*, 746 F.2d 291, 293 (5th Cir.1984). "An ownership interest, of course, may be evidenced in a number of ways including showings of actual possession, control, title and financial stake." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft*, 647 F.2d 864, 866 (8th Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982).

Here, the basis for plaintiffs' ownership interest in the property is that they found it and that, under Puerto Rico law, the act of finding "hidden treasure" is sufficient to create an equitable interest. It is not clear from plaintiffs' submissions whether they were or continue to be in actual possession of a portion of the currency, although the government asserts that, after finding the barrels, plaintiffs took an undetermined amount of currency. In any case, plaintiffs' claim is for the *entire amount* contained in the barrels. While we rule below that, by operation of law, plaintiffs fail to demonstrate an ownership interest in the currency, we think that their allegations were sufficient to allege a "facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy require-ment and 'prudential considerations defining and limiting the role of the court.'" *United States v. $321,470.00, United States Currency*, 874 F.2d 298, 302 (5th Cir.1989) (quoting *United States v. One 18th Century Columbian Montrance*, 797 F.2d 1370, 1373 (5th Cir.1986), *cert. denied sub nom Newton v. United States*, 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496 (1988); *One Parcel*, 942 F.2d at 78–79. Accordingly, if plaintiffs had complied with Supp. Rule C(6), their allegations relating to hidden treasure would have allowed them, at least at the initial stage, access to the courts to contest their claim.

■ Turning to the merits, we first briefly review the forfeiture process. The statute under which the property was forfeited, section 881(a)(6) of Title 21, provides:

> (a) The following shall be subject to forfeiture to the United States and no property right shall vest in them:
>
> . . . .
>
> (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, *all proceeds traceable to such an exchange*, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6) (emphasis added). In a forfeiture action, the government must first demonstrate "the existence of probable cause to believe that the property had the requisite nexus to a specified illegal purpose." *U.S. v. One Lot of U.S. Currency*, 927 F.2d 30 (1st Cir.1991); *One Parcel*, 942 F.2d at 79. At that point, the burden shifts to the claimant to prove both "an ownership interest in the property and ignorance of the illegal conduct which gave rise to the forfeiture." *Id.*, at 79; *United*

*States v. $250,000 in United States Currency,* 808 F.2d 895, 900 (1st Cir.1987). It is in proving an ownership interest that plaintiffs' claim fails.

In order to qualify as "hidden treasure" for purposes of Article 285 of the Civil Code, 31 L.P.R.A. § 1116, the property discovered must fit within the statutory definition of "treasure". Article 286 of the Code provides that "[b]y treasure is understood, for legal effects, any hidden or unknown deposit of money, jewelry, or other precious objects, the lawful ownership of which is not proven." 31 L.P.R.A. § 1117. Therefore, in order for the currency to be considered treasure, the statute requires that it be: (1) hidden or unknown; (2) a deposit of money, jewelry, or other precious objects; and (3) that the lawful ownership not be proven. We must, therefore, look to the ownership of the monies at the time of discovery. If it can be proven that the ownership vested in anyone at the time plaintiffs discovered the barrels, then the monies cannot be considered "treasure" under Puerto Rico law and its discovery vests in plaintiffs no equitable interest. Plaintiffs' argument is that since Torres disavowed knowledge of both the land and the monies, they were without known ownership at the time of the discovery. Unfortunately for plaintiffs, in fact, at the time of the monies' discovery title had already vested in the United States. Section 881(h) provides that:

> [a]ll right, title, and interest in property described in subsection (a) of this section shall vest in the United States *upon commission of the act giving rise to the forfeiture under this section.*

21 U.S.C. § 881(h) (emphasis added). This section conforms to the long-standing practice of vesting title of properties subject to forfeiture in the United States at the time of the criminal activity based on the theory that the proceeds themselves were "tainted" by the illegal activity. *Caplin & Drysdale Chartered v. United States,* 491 U.S. 617, 109 S.Ct. 2646, 2653, 105 L.Ed.2d 528 (1989); *United States v. Land and Bldg. at 2 Burditt Street,* 924 F.2d 383, 385 (1st Cir.1991); *United States v. Kingsley,* 851 F.2d 16, 19–20 (1st Cir.1988).

Applying the relation-back provision of section 881(h), after forfeiture, title to the currency vested in the government from the time the illegal transactions occurred. This vesting occurred prior to burial of the monies. It was in order to safeguard these proceeds that the barrels found their way underground. Consequently, at the time plaintiffs discovered them, the "taint" had already occurred. Therefore, since title vested prior to plaintiffs' discovery, they cannot establish the third element of the definition of treasure, that lawful ownership not be proven, and cannot, therefore, claim any equitable interest under the Puerto Rico statute. Therefore, their claim to the monies must fail.

■ Nor would the "innocent owner" exception to 21 U.S.C. § 881(a)(6) save plaintiffs' claim. Unlike the more usual case where a court must first determine whether the "innocent owner" exception applies to defeat forfeiture before applying the relation-back provision of section 881(h), *see United States v. Parcel of Land, Bldgs., Appurtenances & Improv., etc.,* 937 F.2d 98, 102–03 (3rd Cir.1991), here we are faced with the situation where, in order to demonstrate an equitable interest in the goods, claimants would have to prove *the absence of title* in the property prior to its "discovery." Rather than attempting to demonstrate "innocence", the plaintiffs here are hinging their right to claim the monies on alleged "ownership" of the funds through the Puerto Rico statute. Whereas in the former case, the relation-back provision would emasculate the exception since, by definition, no subsequent owner after the occurrence of a drug transaction would be able to claim the status of an "innocent owner", thus reading the exception out of the statute, *A Parcel of Land,* 937 F.2d at 102, here plaintiffs' "innocence" is not in question. Rather, it is their ability to prove some sort of "ownership" interest in the property. As such, the relation-back provision, vesting title in the government at the time the illegal activity transpired, can be applied in harmony with the rest of the forfeiture statute. We, therefore, hold that the relation-back provi-

sion of section 881(h) vests title in the forfeited currencies at the time of the occurrence of the illegal transactions.

Finally, we also think that plaintiffs' "abandonment" argument must also fail based on common sense. Plaintiffs claim that Torres González, the former owner of the land, disavowed any knowledge of the buried treasure. However, it is beyond belief that anyone would bury $43,000,000 in the soil and then turn around and forget about it. While it is reasonable to believe that Torres González might have disavowed any ownership of the monies *after* his arrest, this court simply cannot accept that, for a period of time, the monies remained "ownerless". In any case, during the entire period the currency was in the ground, regardless of who claimed ownership, the money was "tainted" and should, therefore, be subject to the relation-back rule of section 881(h).

### III.

### Conclusion

In sum:

Based on the finding that plaintiffs failed to timely file a verified claim, they lack statutory standing to challenge the government's forfeiture of the property.

Also, because plaintiffs do not have an ownership interest in the currency based on Puerto Rico law, they have no valid claim to the currency.

Accordingly, we GRANT defendant's summary judgment motion and DISMISS the action.

IT IS SO ORDERED.