In re SEIZURE OF $82,000
MORE OR LESS.

Jeffery Chappell, et al., Movants,

v.

United States of America, Respondent.

Nos. 99–0715–CV–W–5,
99–0927–CV–W–5.

United States District Court,
W.D. Missouri,
Western Division.

Nov. 1, 2000.

 

Paul R. Katz, Kansas City, MO, for Plaintiffs.

Frances E. Reddis, U.S. Attorney's Office, Kansas City, MO, for Respondent.

## MEMORANDUM AND ORDER

LAUGHREY, District Judge.

These consolidated cases concern the ownership of $82,000 found in a 1995 Volkswagen Golf titled in the name of Helen Chappell. The United States Government asserts that the $82,000 came from illegal drug sales and should be forfeited to the Government. The Chappells contend that the $82,000 belongs to them because it was found in the gas tank of a car which they purchased from the Government, after the car had been forfeited by its owner. For the reasons stated below, the Court finds that the Government is not entitled to the currency.

## I. *Factual Background*

The following facts have been stipulated by the parties.[1] On February 15, 1996, Corporal Jack McMullin of the Missouri State Highway Patrol stopped a 1995 Volkswagen Golf for speeding and following too closely. During the stop, Corporal McMullin interviewed and became suspicious of both passengers in the vehicle, Roberto Lopez–Velez and Guadalupe Cortez–Amezcua. After a consensual search indicated fresh silicone on the undercarriage of the vehicle, Corporal McMullin asked the occupants if they would mind bringing the vehicle to the Missouri State Highway Patrol garage for a more thorough inspection. The occupants agreed to do so.

Once at the garage, Corporal McMullin found that the battery in the vehicle had recently been removed, and he observed plastic baggies in the battery case. He then contacted Special Agent Carl Hicks, of the Drug Enforcement Association ("DEA"), who responded to assist[2] Corporal McMullin. Special Agent Hicks observed that the plastic baggies contained foil-wrapped objects. When he opened the baggies and foil, he found $24,000 in United States Currency and noticed a strong odor of methamphetamine coming from the baggies.

Special Agent Hicks then interviewed Lopez–Velez and Cortez–Amezcua. Both Lopez–Velez and Cortez–Amezcua explained that they had driven the vehicle from Mexico to a Holiday Inn in St. Louis, Missouri; however, they were unable to identify the Holiday Inn. Lopez–Velez stated that he had parked the vehicle in the parking lot. The vehicle was then picked up by unknown persons and returned. Lopez–Velez admitted that he had known that $24,000 was in the battery of the car and that the currency was from the sale of illegal drugs. Lopez–Velez stated that Cortez–Amezcua did not know about the currency. Lopez–Velez refused to name the person who had hired him to make the trip to St. Louis.

At the conclusion of the interview, Special Agent Hicks announced that he was going to seize the $24,000 as drug proceeds, and was going to seize the vehicle as an item used to transport drug proceeds. Hicks advised Lopez–Velez that he was not under arrest and was free to leave. Lopez–Velez and Cortez–Amezcua left the highway patrol garage and have not returned.

---

1. Both parties agree that the Court should decide this case based on the stipulated facts and inferences to be drawn from them.

2. The Kansas City Star has been investigating the practice of state law enforcement officials calling federal agents to "assist" them in seizing property. *See* Karen Dillon, *Taking Cash Into Custody: Across U.S., Police Dodge State Seizure Laws*, THE KANSAS CITY STAR, May 22, 2000, at A1. The legality of such practices is not an issue before this Court, however.

Special Agent Hicks sent the plastic baggies and foil for analysis. The substance on the foil was found to be caffeine, an ingredient commonly used as a cutting agent for methamphetamine. The DEA subsequently determined that the 1995 Volkswagen Golf was registered to Miguel Angel Sanchez–Cortez, Punta Del Este, 967 Saltillo, Coah, Mexico.

Following the procedures established by Congress for the disposition of seized property, the DEA initiated an administrative forfeiture action against the $24,000 and the 1995 Volkswagen Golf. The only claimant who came forward to contest the forfeiture of those items was Lopez–Velez, who filed a claim and cost bond on April 30, 1996. On July 10, 1996, an Assistant United States Attorney mailed a stipulation to an attorney for Lopez–Velez, proposing the settlement of the claim prior to the filing of a judicial action. The attorney for Lopez–Velez requested that the stipulation be mailed to him for his client's signature. The stipulation was never returned to the United States Attorney's Office. On April 2, 1998, the United States Attorney's Office, with the concurrence of the attorney for Lopez–Velez, referred the case back to the DEA to have the vehicle and the $24,000 declared abandoned. On June 12, 1998, the DEA declared the 1995 Volkswagen Golf and the $24,000 abandoned.

On September 24, 1998, the DEA referred the 1995 Volkswagen Golf to the General Services Administration ("GSA") for sale because the DEA did not have the capacity to conduct a public auction. The DEA authorized GSA to sell the car but made no mention of the vehicle's contents. The DEA advised GSA that it had no information indicating that the vehicle required repairs, but also advised GSA that it believed the odometer reading was incorrect.[3]

On February 1, 1999, GSA advertised the 1995 Volkswagen Golf for bids. Item No. 030 on the advertisement described the property as follows: "Sedan 1996 Volkswagen Golf 4 cyl (IT–96–0037) Vin: 3VW1931HMSM113340 est 5,955 mile—mileage will not be certified—odometer discrepancy (156435–8267–0001) 1 EA." Helen Chappell was the successful bidder for the 1995 Volkswagen Golf. On April 14, 1999, Jeffery Chappell's Discover credit card was used to pay for the vehicle, and Helen Chappell received from GSA a Certificate to Obtain Title to a Vehicle. The vehicle is currently titled in Helen Chappell's name. At the time of this purchase, neither the Chappells, the DEA nor GSA knew that $82,000 was hidden in the fuel tank of the vehicle.

Not surprisingly, the Chappells noticed that the Volkswagen Golf had a fuel problem. Jeffery Chappell took the vehicle to Waldo Imports in Kansas City, Missouri, to have the fuel problem fixed. While working on the car, the Waldo Imports' mechanic found several bundles of currency floating in the fuel tank of the vehicle. He reported his find to the DEA office in Overland Park, Kansas. DEA agents went to Waldo Imports and seized 20 bundles of currency wrapped in plastic, totaling $82,000, more or less. A check of each bill revealed that none of the bills had a printing date later than 1996, when the vehicle was originally seized. On the date of the seizure, Special Agent Melton contacted Jeffery Chappell, who explained that he had recently purchased the vehicle from GSA and had been unaware that the currency was inside the fuel tank.

The Chappells have filed for the return of the currency pursuant to Federal Rule of Criminal Procedure 41(e) (1999). The United States has filed for judicial foreclosure claiming the currency as drug proceeds pursuant to 21 U.S.C. § 881.

---

**3.** The DEA learned of the odometer problem from a May 19, 1998 note contained in the file of the United States Marshal Service. It said that "Laura" drove the 1995 Volkswagen Golf to Innerspace Storage and she noted that the "gages don't work! Gas always shows 'E,' doesn't show speed [and] odometer never changes. Odometer Discrepancy."

## II. *Discussion*

### A. Jurisdiction

The parties have now stipulated that the Government's administrative proceeding was commenced before the Chappell's filed their Rule 41(e) Motion. For this reason, the Court lacks jurisdiction to address the Chappell's Motion. *See Muhammed v. Drug Enforcement Agency, Asset Forfeiture Unit*, 92 F.3d 648, 652 n.4 (8th Cir. 1996). The Court, therefore, dismisses the Chappell's Rule 41(e) Motion, leaving only the United States' forfeiture action.

The Government also claims that the Chappell's lack standing to contest the United States' forfeiture action because neither will suffer an injury-in-fact if the currency is forfeited to the United States. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that Article III of the United States Constitution limits federal jurisdiction to "cases & controversies," meaning instances in which plaintiffs will suffer "injury-in-fact" if relief is denied.) The Government first argues that Jeffery Chappell will suffer no injury because his mother holds title to the Volkswagen Golf, not Jeffery. It reasons that any right Jeffery may have in the $82,000 is derived from an ownership interest in the Volkswagen and he does not own it.

It is true that Helen Chappell holds legal title to the car, but Jeffery Chappell paid for the vehicle using his Discover credit card, arguably creating an equitable interest in the Volkswagen Golf *vis a vis* his mother, but not third parties. There is also evidence that Jeffery had possession of the vehicle and paid for its repairs. For purposes of this litigation, therefore, both Helen and Jeffery Chappell have at least a colorable ownership interest in the Volkswagen. "An ownership interest, of course may be evidenced in a number of ways

including showings of actual possession, control, title, and financial stake." *United States v. One 1945 Douglas C–54 (DC–4) Aircraft, Serial No. 22186*, 647 F.2d 864, 866 (8th Cir.1981). Furthermore, it is clear that the vehicle is owned by Jeffery Chappell, Helen Chappell or both. A definitive ruling on ownership at this juncture will not benefit the Government. Even if the Court dismissed Jeffery Chappell's claim, Helen Chappell's identical claim would go forward.

The Government also argues that neither Jeffery nor Helen Chappell will suffer an injury-in-fact because the Chappells don't own the $82,000 found in the Volkswagen. Definitive proof of ownership is not needed to establish standing. *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2nd Cir.1999) ("An allegation of ownership and some evidence of ownership are together sufficient to establish standing to contest a civil forfeiture.") (*quoting Torres v. $36,256.80 United States Currency*, 25 F.3d 1154 (2nd Cir. 1994)).[4] In a case such as this where there is a colorable claim of ownership, the question of standing and the merits of the Chappells' claim are effectively one and the same. The Court now turns to the merits of the dispute.

### B. The Innocent Owners Defense

This judicial forfeiture action is governed by 21 U.S.C. § 881, which provides, in relevant part, that:

. . .

> (a) The following shall be subject to forfeiture to the United States and no property right shall vest in them:
>
> > (6) All moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . ., and all proceeds

---

4. *Cambio Exacto* lists several examples of cases in which a claimant would lack standing to challenge a forfeiture. *See* 166 F.3d at 528. However, in none of these instances did the claimant purport to be the actual owner of the property which was seized. The facts

of *Cambio Exacto* involved a claim by the actual owner of property, and the Second Circuit concluded definitively that the claimant had standing, noting that to deny standing "would raise serious due process concerns." *Id.*

traceable to such an exchange, ... except that no property shall be forfeited under this paragraph to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(6). This statute therefore protects "innocent owners" of property from forfeitures, even if the property is ultimately traceable to drug trafficking. Because the United States has shown probable cause to believe that the $82,000 is subject to forfeiture as drug proceeds, the Chappells must prove their "innocent owners" defense by the preponderance of the evidence. *See United States v. Premises Known as 3639–2nd St., N.E., Minneapolis, Minn.*, 869 F.2d 1093, 1095 (8th Cir.1989). The United States does not dispute that the Chappells are innocent, but it does dispute that they are owners.

The Chappells advance two theories to support their claim that they own the $82,-000. First, they argue that the contents of a car pass automatically to the purchaser of the car simply because the transferor had the power to transfer the contents. Second, they argue that the $82,000 is mislaid property and the Chappells are entitled to the currency because they own the premises (the vehicle) where the currency was found. Neither argument is viable.

■ The evidence is insufficient to show that the Government intended to transfer ownership of the $82,000 to the Chappells at the time it sold the Volkswagen to them. There cannot be an agreement to transfer ownership if neither party is aware that the property exists. *See J & E Salvage Co. v. United States*, 37 Fed. Cl. 256 (1997), *aff'd*, 152 F.3d 945 (Fed.Cir.), *cert. denied*, 525 U.S. 827, 119 S.Ct. 76, 142 L.Ed.2d 59 (1998); *West Coast Airlines, Inc. v. Miner's Aircraft & Engine Serv., Inc.*, 66 Wash.2d 513, 403 P.2d 833 (1965). Chappells' argument that someone actually transfers ownership of property simply because they had the power to do so and the property changes possession is not supported by the authorities cited by the Chappells and is inconsistent with the basic principles of the Uniform Commercial Code and common law.

■ Nor can this currency be characterized as mislaid. Property is mislaid if it is voluntarily put down by its owner and its owner forgets where the property is. *Hoagland v. Forest Park Highlands Amusement Co.*, 170 Mo. 335, 70 S.W. 878, 880 (1902). A purse found on a counter or the seat of a bus will generally be characterized as mislaid because it is logical to assume that the purse was intentionally placed and then forgotten. A wallet found on the floor, however, will be characterized as lost because it is unlikely that someone would put a wallet on the floor intending to return for it. If property is lost, possession of the property is entrusted to the finder of the lost property not the owner of the premises where the property is found. *Id.* at 880. If the property is mislaid, then the owner of the premises where the property is found is entitled to possession, not the finder. *State ex rel. Scott v. Buzard*, 235 Mo.App. 636, 144 S.W.2d 847, 849 (1940).

The factual record in this case does not support the Chappells' conclusion that the $82,000 is mislaid property. While the money was almost certainly placed in the gas tank intentionally, it is equally certain that the owners of the currency knew what happened to the money and chose not to claim it. Indeed, at least one district court has concluded that it is "beyond belief" that anyone would hide a large amount of currency and then suddenly forget where it was. *Sanchez v. United States*, 781 F.Supp. 835, 841 (D.P.R.1991).

Both cases cited by the Chappells in support of their argument that the currency was mislaid are distinguishable. In *Benjamin v. Lindner Aviation, Inc.*, 534 N.W.2d 400 (Iowa 1995), a large amount of cash was found in the wing of the airplane. The cash had been in the plane for nearly 30 years and there was no evidence as to

why the money was secreted or to whom it belonged. *Id.* at 407. Similarly in *Buzard,* a large amount of cash was secreted in the wall of a building. There was no way to identify how long the money had been in the wall or who might have hidden it. In both cases, the courts characterized the money as mislaid. The courts reasoned that, but for a lapse of memory, the true owners would have returned for such valuable property. The record in this case, however, is not so skeletal. There is a good explanation for why the true owners did not seek to recover the currency even though they knew where it was. The money was owned by drug dealers and if they came to claim it, they might eventually be arrested for participating in a drug conspiracy. Because the Court finds that the owner of the $82,000 knew its location, the second prong of the mislaid property test was not satisfied.

■■■ Instead of finding the property lost or mislaid, the Court finds the property abandoned. Abandonment consists of two elements: "(1) an intent to abandon, and (2) the external act by which the intention is carried into effect." *Hoffman Management Corp. v. S.L.C. of North Am., Inc.,* 800 S.W.2d 755, 762 (Mo.App.1990) (*quoting Linscomb v. Goodyear Tire & Rubber Co.,* 199 F.2d 431, 435 (8th Cir. 1952)). Although abandonment should not be presumed lightly, it may be found when the evidence clearly and decisively leads to that conclusion. *Id.* This is such a case. Drug traffickers know better than to stake claims to contraband and drug proceeds. It is far more sensible for such criminals to disclaim any interest in the property and avoid possible prosecution. *See Herron v. Whiteside,* 782 S.W.2d 414, 416 (Mo.App. 1989). In this case, Lopez–Velez originally contested the forfeiture of the vehicle and the $24,000, but he never showed up to pursue his claim. It would stretch credulity to conclude that he knew about the

$24,000 in the battery case and that the vehicle was transporting drug proceeds, but he and the owner of the car did not know about the $82,000. Rather, the evidence shows that the original owners of the currency intended to abandon the $82,000 after the 1995 Volkswagen Golf was seized by the DEA, and that they acted on this intent by failing to come forward and claim the funds.

■■■ Under Missouri law, those who abandon property lose title. *See Wirth v. Heavey,* 508 S.W.2d 263, 267 (Mo.App. 1974). Therefore, under Missouri law, no one owned the $82,000 while these funds were hidden in the Volkswagen Golf after it was abandoned. *See Foster v. Fidelity Safe Deposit Co.,* 162 Mo.App. 165, 145 S.W. 139, 142, (1912). The currency went back into a state of nature analogous to wild animals. *See Pierson v. Post,* 3 Cai. R. 175 (N.Y.Sup.1805). The question is who has the right to this currency which was abandoned and for a period of time was owned by no one?

■■■ Once property has been abandoned, the first finder who acquires dominion over the property becomes its owner. *Foster,* 145 S.W. at 142; *Campbell v. Cochran,* 416 A.2d 211 (Del.Super.1980). The first person to exercise dominion over this $82,000 was the Waldo mechanic. The mechanic, however, was acting as the Chappells' agent at the moment he took possession of the currency. *Greer Lines Co. v. Roberts,* 216 Md. 69, 139 A.2d 235, 240 (1958) (Jury could reasonably find that mechanic was agent of car owner.) He had been told that there was a fuel problem with the vehicle. It was during his investigation of the fuel problem that he found the $82,000. Under these circumstances should the agent or his principal be entitled to the currency?

Missouri has not specifically addressed this question,[5] but other jurisdictions have

**5.** *In Hoagland,* 170 Mo. 335, 70 S.W. 878, the Missouri Supreme Court cited cases dealing with lost property where the employee was held to have superior rights to the employer, but the court did not have the agency question before it and the property in question was lost not abandoned. In *Buzard,* 235 Mo. App. 636, 144 S.W.2d 847, the Missouri Supreme Court found in favor of the owner of a building against the employee but that case

held that possession by the agent is in fact possession by the principal. *South Staffordshire Water Co. v. Sharman,* 2 L.R.Q.B. Div. 44 (1886); *Goodhart, Three Cases on Possession,* 3 CAMB. L.J. 195, 205–06 (1928); *Jackson v. Steinberg,* 186 Or. 129, 200 P.2d 376, 378 (1948). In *Ray v. Flower Hosp.,* 1 Ohio App.3d 127, 439 N.E.2d 942, 945 (1981) the Ohio Court of Appeals stated: "In a long line of cases where hotel chambermaids, bank janitors, bank tellers, grocery store bagboys and other employees have found property while in their employ, virtually every case has charged the employee with the duty to turn the found property over to the employer for safekeeping." The reason for such a holding is that " ' . . . the possession of the servant . . . [is] the possession of the [employer] and that, therefore, the element is wanting which would give the title to the servant as against the master . . . ' " (quoting *Jackson,* 200 P.2d at 379). *Also see,* Boyer, Hovenkamp & Kurtz, *The Law of Property* at 8 (4th Ed.) (". . . [T]he possession of articles found during and within the scope of one's employment is generally awarded to the employer and not to the finder.")

Not all courts have agreed on this issue, however. *See, Kalyvakis v. The Olympia,* 181 F.Supp. 32, 36–37 (S.D.N.Y.1960). *Also see,* R.H. Helmholz, *Equitable Div. and the Law of Finders,* 52 FORDHAM L. REV. 313, 319 (1983) ("As with the distinction between lost and mislaid items based on the place of finding, the distinction between finding by employees and finding by non-employees has appeared incapable of consistent application over the course of the last forty-five years.")

 The Court finds the more persuasive position on this question is that abandoned property found by an agent is the property of the principal, so long as the agent is acting within the scope of his agency. This is consistent with Missouri's position that an agent must account for

any profits he acquires during the agency relationship. *Groh v. Shelton,* 428 S.W.2d 911, 916 (Mo.App.1968). This case is also factually distinguishable from *Kalyvakis,* 181 F.Supp. at 36–37 where a steward on a steamship found property on the deck of the ship while walking from one place to another. In contrast, the Chappells told their mechanic to fix the fuel problem in their car and it was during the mechanic's specifically assigned task that the money was located. Finally, and most importantly, this conclusion is consistent with the reasonable expectations of a car owner. One does not expect that the mechanic to whom a car is entrusted has the right to look through it and keep things which are hidden therein.

For similar reasons, the courts have held that objects found underground belong to the land owner, not the person who found them. *Allred v. Biegel,* 240 Mo.App. 818, 219 S.W.2d 665 (1949) "In such cases it is held that the presumption is that the finder has no rights therein, the presumption being that possession is in the owner of the locus in quo." *Id.* at 666. "Because of policy concerns, courts award embedded property to the locus owner. Courts consider embedded property to be an exception to the general category of lost property. By distinguishing embedded property from other finds, courts hope to eliminate waste and spoilage of property and recognize locus owners' expectations about and constructive possession of items embedded within the land." Leanna Izuel, *Property Owners' Constructive Possession of Treasure Trove: Rethinking the Finders Keepers Rule,* 38 UCLA L. REV. 1659 (1991). For all these reasons, the Court concludes that the Chappells became the owner of the $82,000 when the mechanic first found the money.

 The Government, however, contends that it owned the currency prior to it being found in the gas tank and therefore

---

involved mislaid property. The courts in *Foster,* 162 Mo.App. 165, 145 S.W. 139 (Mo.App. 1912) and *Allred v. Biegel,* 240 Mo.App. 818,

219 S.W.2d 665 (1949) both found in favor of the land owner but the finders in those cases were not employees.

the government has superior rights to the currency. The Government's argument is based on the "relation back" provision of the federal forfeiture law which provides: "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h). The Government, therefore, argues that its title relates back to the illegal activity that involved the currency.

The United States Supreme Court clarified the relationship between the innocent owner provision and the relation back provision in *United States v. Parcel of Land, Bldgs., Appurtenances and Improvements, Known as Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). In *Buena Vista*, the Court addressed "whether an owner's lack of knowledge of the fact that her house had been purchased with the proceeds of illegal drug transactions constitutes a defense to a forfeiture proceeding." *Id.* at 114, 113 S.Ct. 1126. The Government argued that, because of the relation back provision, the claimant was not the "owner" of the house, and therefore could not invoke the innocent owner defense. *Id.* at 123–24, 113 S.Ct. 1126. The Supreme Court held that, in forfeiture proceedings, the Government's title would not relate back to the time of a crime unless and until a forfeiture was declared. *Id.* at 124, 113 S.Ct. 1126. The Supreme Court reasoned that to hold otherwise would "effectively eliminate the innocent owner defense in almost every imaginable case in which proceeds could be forfeited." *Id.* Thus, under the reasoning of *Buena Vista*, the Government does not yet have title to the $82,000 because no forfeiture has been declared, and the Chappells are entitled to the currency as innocent owners.

The Government attempts to distinguish *Buena Vista* by relying on *Sanchez*, 781 F.Supp. at 841. The *Sanchez* Court noted, in *dicta*, that the Government's title would relate back even before a forfeiture if a claimant's *ownership* was questioned, but not if a claimant's *innocence* was questioned. *Id.* However, *Sanchez* is unpersuasive. First, *Sanchez* was decided before *Buena Vista*, and the district court that decided the case did not have the benefit of the Supreme Court's reasoning on this issue. Further, in *Buena Vista*, the Government did question the claimant's ownership of the house, and yet the claimant was allowed to invoke the "innocent owner" defense. 507 U.S. at 123–24, 113 S.Ct. 1126.

The United States finally argues that "public policy should not allow anyone to profit from illegal drug trafficking." [U.S. Opp. at 9–10]. The question in this case, however, is not whether anyone should profit from drug activity, but rather who should profit from it—the United States or the Chappells. In shielding innocent owners from the forfeiture laws, Congress has expressed a public policy in favor of allowing innocent people like the Chappells to keep their property even if it consists of drug proceeds. It should also be noted that the Chappells would never have acquired an interest in this $82,000 if the Government had found the currency during the years that the Volkswagen Golf was in its possession. The reason the car was seized in the first place was the recent work that had been done on the undercarriage. This, plus the fact that the gas gauge always registered empty, might have inspired a search of the gas tank before the car was sold at auction. As early as the 1970s when "Easy Rider" was aired, the Government was on notice that drug dealers use gas tanks to hide their contraband. While the equities do not weigh in the Chappells' favor since the $82,000 is a windfall, neither do the equities weigh in favor of the Government. The common law principles discussed in this Order should, therefore, prevail. Accordingly, it is hereby

ORDERED that Case Number 99–0715–CV–W–5 is DISMISSED for lack of jurisdiction. It is further

ORDERED that the United States's Motion to Dismiss and Motion for Default

Judgment of Forfeiture (Doc. # 38) are DENIED. It is further

ORDERED that Claimants' Motion for Summary Judgment in Case Number 99–0927–CV–W–5 (Doc. # 37) is GRANTED. The Chappells are innocent owners of the $82,000 at issue in this proceeding, and the Government should release the funds to them.