**SAM GRAY ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–408C.

United States Court of Federal Claims.

Jan. 3, 1995.

Gene M. Connell, Jr., Surfside Beach, SC, for plaintiff.

Thomas P. McLish, Washington, DC, with whom was Asst. Director James M. Kinsella, for defendant; Paula Barton, Dept. of State, of counsel.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss pursuant to RCFC 12(b)(1). For the reasons set forth below the court grants defendant's motion.

## FACTS

This suit centers around an alleged contract between plaintiff, Samuel Gray, Jr., and the United States, acting through the charge d'affaires of the United States Embassy in the Bahamas. Plaintiff has been involved in various business enterprises on Exuma Island located in the Bahamas, which recently included leasing apartments. Plaintiff alleged that he entered into a contract with the United States which required the United States to lease certain apartments for five years at $1,500 per month. Relying on the alleged contract, plaintiff borrowed 1.2 million dollars from the Bank of Nova Scotia for construction of nineteen apartment units in George Town, Bahamas.

After the units were constructed, plaintiff leased them to TCOM, L.P., (TCOM) for

fifteen months, and then to Loral Aerospace International, Inc. (Loral) for another seven months. TCOM and Loral were under contract with the United States to provide services related to drug interdiction efforts in the Bahamas. The companies leased the apartments from plaintiff for the purpose of housing those of their employees involved in that project.

In August 1992, Loral informed plaintiff that it did not intend to extend its lease for the apartments beyond September 30, 1992. Plaintiff contacted the United States Embassy in the Bahamas and asserted that the Embassy was obligated to lease the apartments for five years. Pamela Dunham, contracting officer at the Embassy, informed plaintiff by letter that the Embassy had no such obligation; she believed that plaintiff's lease agreements with TCOM and Loral superseded and made inoperative the letters of intent from the United States Embassy. After a meeting with plaintiff, James M. Griffin, an administrative officer at the Embassy, also informed plaintiff by letter that the United States was not obligated to continue the lease of the apartments. Mr. Griffin suggested that plaintiff direct any further inquiries to the Air Force, the agency that had contracted with Loral.

Shortly thereafter plaintiff wrote to Lt. Col. Gregory A. Spilker of the 4400 Contracting Squadron, Langley Air Force Base, Virginia, and stated his belief that Loral's employees had "vacated the rental units without proper notice as required by the Lease Agreement" and that Loral failed to honor its obligation to lease the apartments. Plaintiff further stated that he intended to hold the Air Force, the Embassy and Loral liable "for any loss or damage that I will have suffered as a result of the early termination," and that "the anticipated damage in monetary terms to me is approximately US$700,-000.00." Lt. Col. Spilker responded that neither the Air Force nor its contractors were under any obligation to procure housing from plaintiff. Accordingly, Lt. Col. Spilker advised plaintiff that the Air Force lacked jurisdiction over the matters plaintiff raised.

Plaintiff also advised Acting Secretary of State, Lawrence Eagleburger, of his griev-ance, asking him to "cause the matter to be reviewed with a view to obviating any monetary damages that I may sustain because I believed the assurances given to me by the representatives of the Embassy of the United States in the Bahamas." Dennis J. Gallagher, a State Department Assistant Legal Adviser, responded on behalf of the Secretary, stating: "the United States Government is not your lessee nor your guarantor with respect to the residential premises at issue in this matter, and neither the Embassy nor the Department of State will accept any responsibility for losses you may incur with respect to these premises."

Undeterred, plaintiff sent a number of additional communications, including: (1) a November 24, 1992 facsimile to Lt. Col. Spilker, requesting $84,549; (2) a December 4, 1992 facsimile to Mr. Griffin at the United States Embassy, requesting $85,040.89; (3) a December 12, 1992 facsimile to Lt. Col. Spilker, requesting $84,549 for back rent; (4) a December 22, 1992 facsimile to Lt. Col. Spilker, with two letters attached, requesting back rent of $113,726.51, or alternatively, $1,155,-503 to fulfill defendant's alleged five-year obligation; (5) a January 21, 1993 letter to Lt. Col. Spilker, reiterating his belief that the Embassy was responsible for his "anticipated loss;" (6) a January 26, 1994 letter to John F. Ford, charge d'affaires of the United States Embassy in the Bahamas, requesting $1,281,892.35; (7) a January 31, 1994 facsimile to Lt. Col. Spilker, requesting $1,281,-892.35 for the Embassy's failure to honor its alleged lease obligation; and (8) a February 10, 1993 facsimile to Mr. Griffin at the United States Embassy, requesting back rent of $140,915, plus interest, and $1,155,503 as rent due for the remainder of the five-year period. In March 1994, Lt. Col. Spilker's successor, Lt. Col. Bradley Orton, wrote to plaintiff and again informed him that the Air Force is without jurisdiction over the matters Mr. Gray was raising.

On June 24, 1994, plaintiff filed suit in this Court. In his complaint plaintiff alleged that the United States breached a purported contract by failing to pay monthly rent for the full five-year period. He claimed that the

alleged breach of contract caused damages to him in the amount of $1,971,480.42.

## DISCUSSION

■ In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). When disputed facts relevant to the issue of jurisdiction exist, the court may decide those questions of fact. *Id.; Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988). When subject matter jurisdiction is questioned, the non-moving party bears the burden of establishing the court's jurisdiction. *Reynolds*, 846 F.2d at 748.

■ This Court's jurisdiction is defined by the Tucker Act. 28 U.S.C. § 1491 (Supp. 1992). The Tucker Act alone does not create a substantive right to recover money, but instead waives sovereign immunity under specific conditions. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). In order for this court to exercise jurisdiction over plaintiff's claims, the claims must be predicated on a constitutional provision, statute, executive department regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (Supp.1992); *Nussinow v. United States*, 23 Cl.Ct. 556, 559 (1991). In this case, plaintiff asserted jurisdiction under the Contract Disputes Act (CDA), which applies to "any express or implied contract ... entered into by an executive agency...." 41 U.S.C. § 602(a)(4).

■ Under the CDA, jurisdiction over a claim vests in this court after a contractor has submitted a valid claim in writing to the contracting officer and the contracting officer has denied the claim, or failed to deny it within sixty days. 41 U.S.C. §§ 605, 609; *Paragon Energy Corp. v. United States*, 645 F.2d 966, 227 Ct.Cl. 176, 184 (1981). To satisfy the CDA, a claim need not contain any particular language or conform to any specific format. *See Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). The CDA merely requires the contractor to "submit in writing

to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* at 592 (citing *Tecom, Inc. v. United States*, 732 F.2d 935, 936–37 (Fed.Cir.1984)); *Metric Constr. Co. v. United States*, 1 Cl.Ct. 383, 392 (1983). Such a statement may be in the form of one or several documents. *Contract Cleaning*, 811 F.2d at 592.

■ The CDA also requires that a contractor certify all claims submitted to the contracting officer in excess of $50,000. 41 U.S.C. § 605(c)(1) (1988). The certification must provide that the claim is made in good faith, supporting data are accurate and complete to the best of the contractor's knowledge and belief, and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. 41 U.S.C. 605(c)(1); *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1579 (Fed.Cir.1992); *Hamza v. United States*, 31 Fed.Cl. 315 (1994). Although certification of a claim is a jurisdictional prerequisite to suing in this court under the CDA, *Hamza*, 31 Fed.Cl. at 324, if a contractor attempts to certify a claim, but the certification is defective, the court retains jurisdiction over the claim, but the contractor must correct the defect. 41 U.S.C. §§ 605(c)(1), 605(c)(6) (1988 & Supp. IV 1992); *Hamza*, 31 Fed.Cl. at 323. Nonetheless, a contractor must make some attempt to certify its claim before filing suit in this court. *Hamza*, 31 Fed.Cl. at 323–24.

In the present case, plaintiff failed to submit a valid claim to a contracting officer and to certify his claims. These failures deprive the court of jurisdiction over the case.

■ Plaintiff's communications, taken as a whole or individually, do not constitute a valid claim for CDA purposes. Although a claim need not contain any particular language, it must, among other things, expressly or impliedly request a final decision, and a sum certain. *Id.* at 321. Plaintiff's communications do not satisfy these requirements. As a whole, plaintiff's communications did not request a sum certain, because the individual communications that make up the whole did

not request the same monetary damages. Individually, plaintiff's communications did not express the requisite language of finality—so that the contracting officer had no basis for determining which communication was intended to be a final claim. Accordingly, the court holds that plaintiff's case is not predicated upon the denial of a valid claim before a contracting officer.

■ In addition, the court holds that plaintiff failed to certify properly any of the communications that allegedly constituted his claim. Plaintiff argued that the required certification was contained in a letter to Lt. Col. Spilker, which stated in pertinent part:

I acted in good faith and at a tremendous cost to myself, borrowed approximately Two Million Dollars in my desire to accommodate the United States Government by providing rental units for employees of its contractors.

The only part of the letter which remotely resembles certification is the phrase "good faith." Nowhere does the letter state that the claim is made in good faith, supporting data are accurate and complete to the best of the contractor's knowledge and belief, and the amount requested accurately reflects the contract adjustment for which the contractor believes the Government is liable. The court can not conclude that plaintiff's complaint was properly certified.

■ The court also can not conclude that plaintiff accomplished a defective certification, which would permit correction of the defect instead of dismissal of the case. A fair reading of plaintiff's letter demonstrates that plaintiff's inclusion of the words "good ·faith" was coincidental. No other words in the letter resemble the statutory language or demonstrate any attempt by plaintiff make himself personally liable for the claim. The certification requirement is intended to discourage the submission of unwarranted contractor claims through creation of personal liability. *Transamerica*, 973 F.2d at 1579–80; *Hamza*, 31 Fed.Cl. at 321–22. Plaintiff's alleged certification does not effect this purpose. In fact, it bears so little resemblance to the broadest possible reading of the certification requirement that the court finds that plaintiff never made any attempt to certify his claim and that his allegation is merely an after-the-fact attempt to ameliorate his error.

### CONCLUSION

The court finds that plaintiff failed to submit a valid claim to a contracting officer, and failed to certify his claim, as required by the CDA. Because these failures deprive this court of jurisdiction, the court grants defendant's motion to dismiss and dismisses the case.

**IT IS SO ORDERED.**