The PEVAR COMPANY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–465C.

United States Court of Federal Claims.

March 7, 1995.

Dale C. Nathan, Eagan, MN, for plaintiff.

Lauren S. Moore, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, David M. Cohen, Director, and James M. Kinsella, Asst. Director, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). Because plaintiff failed to comply with the jurisdictional prerequisites of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988 & Supp. V 1993) (CDA), the court grants defendant's motion.

## FACTS

On February 15, 1991, plaintiff, the Pevar Company, entered into contract FO603–91–C8208 with defendant, the Department of the Air Force. Plaintiff agreed to design and construct a new building, called Zero Bay, at the Dover Air Force Base in Dover, Delaware. Plaintiff alleged that, during construction, defendant made numerous changes to the design of the building which increased plaintiff's costs. When plaintiff sought reimbursement for such costs, a disagreement ensued over the amount defendant owed. Ultimately, the parties entered into a settle-

ment agreement, which plaintiff alleged was signed under economic duress. Plaintiff also alleged that defendant withheld money owed under the agreement in order to coerce plaintiff into performing additional work.

In response to the government's alleged mismanagement of the situation, Pevar wrote a letter on June 23, 1993 to Lt. Col. Graves, a contracting officer for the United States Army. In the letter, Pevar included: a request for a $39,900 payment ($100 less than the $40,000 remaining due under the contract); a list of damages valued at $759,633, which plaintiff stated was subject to review by auditors; and a list of possible consequential damages, with no value attached. Plaintiff also requested further negotiations with government representatives. The contracting officer interpreted the letter as a claim for $759,633 in damages, and on July 16, 1993 rendered a purported "final decision," denying all of this claim.

On July 19, 1994, Pevar filed a complaint in the United States Court of Federal Claims, pursuant to the CDA. Plaintiff asked that the court void the settlement agreement, and award it damages in the amount of $937,433.[1] Plaintiff also sought reasonable attorney's fees and costs, and any further relief the court in its judgment may deem just and proper.

Defendant responded to the complaint by filing a motion to dismiss for lack of subject matter jurisdiction, alleging that plaintiff failed to comply with the jurisdictional prerequisites of the CDA. Specifically, defendant alleged that plaintiff did not submit a valid claim to the contracting officer within the meaning of the CDA and did not certify its claim. In its response, plaintiff disagreed with defendant's assertion that it failed to submit a valid claim but conceded that it did not certify the claim. Plaintiff further stated that it would "welcome a decision by the court that defendant is right and a proper claim was not submitted to the contracting officer because plaintiff could then renew its claim and appeal to the Armed Services Board of Contract Appeals."

---

1. The damages sought by plaintiff included $217,800 claimed by a subcontractor (Marshall and Son, Inc.) sponsored by Pevar in this action, and excluded $40,000 paid to plaintiff by defendant under the terms of the settlement agreement.

## DISCUSSION

In considering defendant's motion to dismiss for lack of subject matter jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). When disputed facts relevant to the issue of jurisdiction exist, the court may decide those questions of fact. *Id.; Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988). When subject matter jurisdiction is questioned, the non-moving party bears the burden of establishing the court's jurisdiction. *Reynolds*, 846 F.2d at 748.

As a threshold matter, the court must address plaintiff's request that defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction be treated as a motion for summary judgment because defendant attached materials to its motion which are allegedly outside of the pleadings. RCFC 12(b)(1). In deciding whether the court has jurisdiction to hear the case, the court is not limited to the pleadings, but rather may consider materials and evidence extrinsic to the pleadings. *Cedars–Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1584 (Fed.Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 2738, 129 L.Ed.2d 859 (1994); *Estate of Akin v. United States*, 31 Fed.Cl. 89, 92 (1994) (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1010 n. 4, 91 L.Ed. 1209 (1947)), *aff'd*, 43 F.3d 1487 (Fed. Cir.1994). The truth of a jurisdictional fact must be ascertained before the court can consider the merits of a case, and therefore any materials relevant to the court's jurisdiction may be considered. *See Estate of Akin,* 31 Fed.Cl. at 92. Plaintiff's letter to the contracting officer and his decision are relevant to the jurisdictional issue, and therefore it was proper for defendant to attach these materials to its motion. *See Cedars–Sinai,* 11 F.3d at 1584. Plaintiff's request is denied.

This court's jurisdiction is defined by the Tucker Act. 28 U.S.C. § 1491 (Supp. V 1993). The Tucker Act alone does not create a substantive right to recover money, but instead waives sovereign immunity under specific conditions. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). In order for this court to exercise jurisdiction over plaintiff's claims, the claims must be predicated on a constitutional provision, statute, executive department regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (Supp. V 1993); *Nussinow v. United States*, 23 Cl.Ct. 556, 559 (1991). In this case, plaintiff asserted jurisdiction under the CDA, which applies to "any express or implied contract ... entered into by an executive agency." 41 U.S.C. § 602(a)(4) (1978).

Under the CDA, jurisdiction over a claim vests in this court after a contractor has submitted a valid claim in writing to the contracting officer, 41 U.S.C. § 605(a) (1978), and the contracting officer has denied the claim, or failed to deny it within sixty days, 41 U.S.C. §§ 605(c)(2), (c)(5) (1978). To satisfy the CDA, a claim need not contain any particular language or conform to any specific format. *See Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). The CDA merely requires the contractor to "submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* at 592 (citing *Tecom, Inc. v. United States*, 732 F.2d 935, 936–37 (Fed. Cir.1984)); *Sam Gray Enterprises v. United States*, 32 Fed.Cl. 526, 528 (1995). The Federal Acquisition Regulations, which implement the CDA, define a claim as "a written demand or written assertion ... seeking, as a matter of right, the payment of money in a sum certain, ... or other relief arising under or relating to the contract." 48 C.F.R. § 33.201 (1991); *Hamza v. United States*, 31 Fed.Cl. 315, 320 (1994). A claim must also, either explicitly or implicitly, request a final decision from the contracting officer. *Hamza*, 31 Fed.Cl. at 321.

Plaintiff's letter fails to request a sum certain or a final decision, and therefore does not constitute a valid claim for CDA purposes. First, it does not request a sum certain, because the figures in the letter allegedly representing the government's debts to plaintiff were merely speculative; the letter stated that these figures were "subject to

review and audit ... but represent my best current understanding at this time." The letter further stated that plaintiff "will certify a formal claim after review by the auditors," implying plaintiff lacked sufficient information at that time to make a formal claim for a specific amount. In addition, plaintiff stated that it "could not begin to put a dollar value on the consequential damages." Such explicit language illustrates that a sum certain was not claimed. Second, the letter contained no explicit or implicit request for a final decision. After stating that a formal claim would be filed in the future, plaintiff requested a schedule for prompt negotiations with defendant. In light of plaintiff's statements above, this request implies that plaintiff did not desire a final decision from the contracting officer.

The CDA also requires that a contractor certify all claims submitted to the contracting officer in excess of $50,000. 41 U.S.C. § 605(c)(1) (Supp. V 1993). The certification must provide that the claim is made in good faith, supporting data are accurate and complete to the best of the contractor's knowledge and belief, and the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable. *Id.; Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1579 (Fed.Cir.1992). Although certification of a claim is a jurisdictional prerequisite to suing in this court under the CDA, *Hamza*, 31 Fed.Cl. at 324, if a contractor attempts to certify a claim, but the certification is defective, the court retains jurisdiction over the claim, but the contractor must correct the defect. 41 U.S.C. §§ 605(c)(1), (c)(6) (Supp. V 1993). Nonetheless, a contractor must make some attempt to certify its claim before filing suit in this court. *Sam Gray*, 32 Fed.Cl. at 528; *Hamza*, 31 Fed.Cl. at 324.

The court finds that plaintiff failed to certify its purported claim. In its response plaintiff stated: "a certification of its claim was not submitted to the contracting officer. Under recent legislation, however, this can be corrected by a submission of a proper certification, which plaintiff is willing to do." The court assumes that by citing to "recent legislation," plaintiff is referring to 41 U.S.C. 605(c)(6), which allows correction of a defective certification. In promulgating this legislation, Congress sought to allow contractors to cure "technically defective" certifications—defective as a result of innocent mistake—in order "to avoid repetition of the entire administrative claims process and waste of judicial ... resources." H.Rep. No. 102–1006, 102d Cong., 2d Sess. 28, *reprinted in* 1992 U.S.C.C.A.N. 3921, 3937; *Hamza*, 31 Fed.Cl. at 323. However, the examples given of "technically defective certifications" all share a common element: an attempt was made by the claimant to certify the claim. *Hamza*, 31 Fed.Cl. at 323–24. In the instant case, plaintiff conceded that no such attempt was made, stating in the letter that it would "certify a formal claim after review by the auditors." Because plaintiff never attempted to certify its claim, the legislation allowing a contractor to correct a "technically defective" certification does not apply. *Sam Gray*, 32 Fed.Cl. at 528; *Hamza*, 31 Fed.Cl. at 324. Absent any certification, this court does not have jurisdiction over plaintiff's claim. *Sam Gray*, 32 Fed.Cl. at 528; *Hamza*, 31 Fed.Cl. at 324.

## CONCLUSION

The court finds that plaintiff failed to submit a valid claim to a contracting officer and failed to certify its claim, as required by the CDA. Because these failures deprive this court of jurisdiction, the court grants defendant's motion to dismiss.

**IT IS SO ORDERED.**