J & E SALVAGE CO. et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 96–1C.

United States Court of Federal Claims.

Feb. 7, 1997.

---

258

Jeffrey S. Miller, Jacksonville, NC, for plaintiffs.

Lesleyanne Koch Kessler, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Gregory J. Gushing, Defense Reutilization & Marketing Division, of counsel.

## *OPINION*

MILLER, Judge.

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or, alternatively, for summary judgment pursuant to RCFC 56. In addition to opposing defendant's motion, plaintiffs have cross-moved for summary judgment. Argument is deemed unnecessary.

## FACTS

The facts pertinent to defendant's motion are set forth in an earlier order, *J & E Salvage Co. v. United States*, 36 Fed.Cl. 192, 196 (1996), dismissing plaintiffs' claim for a taking, and are repeated here.[1] On May 19, 1992, at the bequest of the United States Department of Defense, the Defense Reutilization and Marketing Office (the "DRMO") held an auction at Cherry Point, NC, to sell certain surplus materials. John and Teresa Darlingon, general partners of J & E Salvage Co. ("plaintiffs"), purchased several "lots" of surplus merchandise at this auction. At the time of the sale, the purchased goods appeared to be solely large containers used for shipping and storing helicopter transmissions. Because the containers were bolted shut at the time of sale, plaintiffs were unable to ascertain what, if anything, was inside the containers.

After plaintiffs paid for the merchandise, government personnel loaded the goods onto plaintiffs' truck for transportation to their company in Onslow County, NC. At some point after returning to their place of business, plaintiffs opened the containers and discovered that four of them held surplus helicopter transmissions valued at $289,660.00 each.

Plaintiffs notified the DRMO of their discovery so as to avoid any accusations of having acquired the transmissions through illegal means. The DRMO responded by informing plaintiffs that the transmissions were still government property and should be returned immediately. Plaintiffs refused to acquiesce. Subsequently, as opposed to utilizing the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994) (the "CDA"), the DRMO filed suit in the United States District Court for the Eastern District of North Carolina on November 12, 1992, seeking a return of the transmissions.

In their response to the lawsuit, plaintiffs claimed that the CDA governed the matter and thus the federal district court was without subject matter jurisdiction to hear the case. The district court held that it had requisite jurisdiction and that the helicopter transmissions were government property and required plaintiffs to relinquish possession of the transmissions. Moreover, the district court declined to dismiss the Government's claim for compensatory and punitive damages. *United States v. J & E Salvage Co.*, No. 92–162–CIV–4–H (E.D.N.C. Aug. 19, 1994) (unpubl.).

Plaintiffs, fearing the district court's contempt power, obeyed the order and turned the transmissions over to the DRMO on September 9, 1994. Furthermore, to avoid the potential financial ruin of an adverse damages award, plaintiffs entered into a pre-appeal stipulation agreement with the DRMO in which they agreed to pay liquidated damages if the appeals court held that plaintiffs had wrongfully converted the helicopter transmissions. In return the DRMO agreed that if judgment were entered for plaintiffs, it would return the transmissions. Plaintiffs subsequently appealed the district court's judgment to the United States Court of Appeals for the Fourth Circuit on November 9, 1994. On June 14, 1995, the Fourth Circuit reversed and remanded with instructions to grant plaintiffs' motion to dismiss for lack of subject matter jurisdiction. *United*

---

1. Pursuant to the order, which was entered on July 18, 1996, plaintiffs filed an amended complaint and also moved for reconsideration on August 1, 1996, which was denied by order entered on September 20, 1996.

*States v. J & E Salvage Co.*, 55 F.3d 985 (4th Cir.1995).

Subsequently, on August 3, 1995, plaintiffs' counsel sent a letter to the United States Attorney for the Eastern District of North Carolina requesting that the DRMO return the helicopter transmissions to plaintiffs. In response the DRMO sent plaintiffs a document written by Dan Harston, DRMO's Sales Contracting Officer, who plaintiffs claim was not the cognizant contracting officer, entitled "Finding of Fact and Final Decision." This document indicated that the DRMO would not return the transmissions to plaintiffs.

## DISCUSSION

### I. *Jurisdiction*

When evaluating a motion to dismiss pursuant to RCFC 12(b)(1), the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (*citing Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974)); *Catawba Indian Tribe v. United States,* 982 F.2d 1564, 1568–69 (Fed.Cir.1993). If the facts demonstrate any means by which the non-moving party might prevail, the court must deny the motion. *W.R. Cooper General Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988) (*citing Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686). The non-moving party, however, bears the burden of establishing jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988).

Defendant argues that the court lacks subject matter jurisdiction because plaintiffs failed to comply with the requirements of the Contract Disputes Act, 41 U.S.C. §§ 601–613

(1994) (the "CDA"). Defendant first contends that plaintiffs did not submit a valid claim to the appropriate contracting officer. Defendant also asserts that plaintiffs' failure to certify the alleged claim constitutes an additional jurisdictional bar. According to defendant, plaintiffs' failure to comply with the requirements of the CDA renders any purported final decision by a contracting officer invalid and precludes this court from entertaining plaintiffs' claim.[2]

### 1. *Validity of claim*

As sovereign the United States "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941) (citations omitted). Any waiver of sovereign immunity must be unequivocally expressed and may not be implied. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). The CDA serves as such a waiver. However, the court must take care "not to expand [the government's] liability beyond that which was explicitly consented to by Congress." *Fidelity Constr. Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.1983).

The CDA permits this court to entertain claims involving "any express or implied contract for ... the procurement of property, other than real property in being." 41 U.S.C. § 602(a)(1).[3] For the court to have proper jurisdiction under the CDA, there must be "both a valid claim, ... and a contracting officer's final decision on that claim." *James M. Ellett Const. Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996). To comply with the requirements of the CDA,

---

**2.** While it is true that jurisdictional bars may be raised at any time, defendant has waited an unnecessarily long time in the instant case. Defendant filed two dispositive motions, and each party has fully briefed the issues before the court on two separate occasions. The court is aware that this case has been driven primarily by jurisdictional arguments. Had defendant raised its current objections to jurisdiction in its earlier motion, the parties would have been spared the time and the expense associated with addressing the potpourri of issues concerning the merits of the dispute. Now that all of these issues have

been briefed, the court would be remiss if it did not give its views on the merits of the dispute so as to provide guidance to the parties that may assist with respect to future decisions concerning the ultimate disposition of this case.

**3.** Plaintiffs seek to establish jurisdiction under 41 U.S.C. § 609(a)(1). This provision of the CDA enables the contractor to bypass an agency board and bring an action directly in the United States Court of Federal Claims.

"[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a). The question of this court's jurisdiction therefore first turns on whether or not plaintiffs have submitted a valid claim. *See James M. Ellett Const. Co.*, 93 F.3d at 1542.

■ While the CDA places great emphasis on whether a claim has been made, it does not define what constitutes a claim. Accordingly, the court must examine the Federal Acquisitions Regulation (the "FAR"), under which the CDA was implemented, the language of the contract at issue, and the relevant facts. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed.Cir.1995). FAR § 33.201, 48 C.F.R. § 33.201 (1995), defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." [4]

■ Plaintiffs' original position was that the August 3, 1995 letter from Jeffrey S. Miller, plaintiffs' counsel, to Assistant United States Attorney G. Norman Acker, III, constituted a valid claim. Defendant counters that the contents of the August 3 letter were insufficient to constitute a valid claim under the CDA. According to defendant, plaintiffs' failure to ground their letter—in which they demanded a return of the helicopter transmissions—on a contractual basis, as well as the concomitant failure to seek either monetary compensation or another form of contractual relief, disable the August 3 letter as a valid claim. On this basis defendant argues that the final decision issued by the contracting officer in response to the August 3 letter is invalid. Defendant also contends that the August 3 letter does not satisfy the

requirements of the CDA because it was not sent to an appropriate contracting officer.

■ Simply referring to a communication as a claim pursuant to the CDA does not guarantee compliance with the statute. *Mingus Constructors Inc. v. United States*, 812 F.2d 1387, 1394 (Fed.Cir.1987). To serve as a valid claim, there is "no requirement in the Disputes Act that a 'claim' must be submitted in any particular form or use any particular wording." *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987). The submission only need provide the contracting officer "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Id.* The contractor must also request a sum certain or other form of contractual relief. *Reflectone Inc.*, 60 F.3d at 1576. Finally, the contractor is required to seek a final decision. *Transamerica Ins. Corp. v. United States*, 973 F.2d 1572, 1576 (Fed.Cir.1992) *overruled in part on other grounds by Reflectone, Inc.*, 60 F.3d 1572 (Fed.Cir.1995). This desire need not be expressed explicitly and may be implied. *Heyl & Patterson Inc. v. O'Keefe*, 986 F.2d 480, 483 (Fed.Cir.1993) *overruled in part on other grounds by Reflectone, Inc.*, 60 F.3d at 1572.

■ Plaintiffs expressly requested that the DRMO return the helicopter transmissions. Demanding performance is a form of contractual relief and thus satisfies one prong of the FAR definition of a claim. That plaintiffs failed to seek a sum certain is not dispositive. When the amount is easily ascertainable, as it is here, the contractor need not specify a sum certain. *Little River Lumber Co., v. United States*, 21 Cl.Ct. 527, 535 (1990). However, plaintiffs failed to provide a contractual basis that would entitle them to any sort of relief.

■ Furthermore, the August 3 letter does not express, in either an explicit or implicit manner, a desire for a final decision.

---

4. As an additional requirement, the Federal Circuit has provided that a routine request for payment, such as a voucher or invoice, requires that there also be a preexisting dispute. *See Reflectone Inc.*, 60 F.3d at 1577. The circumstances under which this dispute arose are anything but

ordinary. "A demand for compensation for unforeseen or unintended circumstances cannot be characterized as 'routine.'" *Id.* at 1577. Consequently, this transaction cannot be characterized as a routine request for payment.

In the instant case, plaintiffs submitted the alleged claim to Mr. Acker, an employee of the Department of Justice. The mere fact that the alleged claim eventually found its way into the hands of the appropriate contracting officer does not mean that the submission was necessarily proper. As this court's predecessor has noted, a contracting officer has no authority to waive a requirement imposed by Congress. *Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982).

Having sent the alleged claim to Mr. Acker, as opposed to the proper procurement agency, plaintiffs demonstrated no intent to seek a final decision within the meaning of the CDA. A valid claim must be submitted to the contracting officer for a final decision. *James M. Ellett Const. Co.,* 93 F.3d at 1543. Had plaintiffs intended to seek a final decision within the meaning of the CDA, at the very least they would have submitted the alleged claim to the DRMO. *See e.g., Transamerica Ins. Corp.,* 973 F.2d at 1578 (submitting letter to contracting officer's authorized representative indicates implied request for final decision). Submitting the August 3 letter to the Department of Justice indicates that plaintiffs did not intend that the letter serve as a claim pursuant to the CDA.

In support of jurisdiction, plaintiffs cite *Tri–Ad Constructors v. United States,* 21 Cl.Ct. 789 (1990), and *American Pac. Roofing Co. v. United States,* 21 Cl.Ct. 265 (1990). Both of these cases are distinguishable from the case at bar. In each case the claim was submitted to the office in overall charge of the relevant construction project, as opposed to being sent directly to the contracting officer. The submission was made to the appropriate procurement agency. Here the submission was made to an entirely different agency—the Department of Justice—and thus fails to comport with the requirements of the CDA.

 Plaintiffs admit as much when they note: "[I]f intent to submit a claim is a prerequisite for fulfilling the requirements of 41 U.S.C.A. § 605(a), they [the plaintiffs] did

not submit a claim." Plfs' Br. filed Jan. 7, 1997, at 2. Having basically conceded that their August 3 communication does not constitute a valid claim, plaintiffs have chosen to use their final brief as an opportunity to raise a new argument.[5] Plaintiffs suggest that it was actually the Government that submitted a valid claim when Mr. Acker forwarded the August 3 letter to the DRMO.

The CDA offers minimal guidance with respect to what constitutes a valid government claim. The CDA states that "[a]ll claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer." 41 U.S.C. § 605(a). While the assistance offered by the CDA is slight, plaintiffs' argument is not persuasive.

First, the Department of Justice merely forwarded plaintiffs' communication to the appropriate procurement agency. The Government neither demanded any form of relief nor requested any modification of the contract. In previous cases where the Government has been deemed to have asserted a claim, the action in question consisted of, for example, attempting to modify the terms of a contract. *See e.g., Placeway Const. Corp. v. United States,* 920 F.2d 903, 906 (Fed.Cir. 1990) (Government sought contract set off). Second, the Government provided no basis for the alleged claim. *See Volmar Const., Inc. v. United States,* 32 Fed.Cl. 746, 752 (1995) (holding that Government must provide basis for alleged liability to perfect claim pursuant to CDA). Finally, the FAR states that a claim is "a written demand or written assertion by one of the contracting parties...." 48 C.F.R. § 33.201. There is no suggestion that the Government made any sort of written demand or assertion to the DRMO. In short, the Government took no action other than that required to forward the letter to the DRMO.

### 2. *Failure to certify the claim*

 In addition to requiring a proper claim, the CDA also requires that claims in

---

5. Were the court inclined to accept plaintiffs' argument, defendant would have been allowed to

file another brief.

excess of $100,000.00 be certified. 41 U.S.C. § 605(c)(1). Certification of claims ensures that "the claim is made in good faith, that the supporting data are accurate and complete to the best of [the contractor's] knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable...." 41 U.S.C. § 605(c)(1). "The purposes of the certification requirement are to discourage the submission of unwarranted contractor claims and to encourage settlements." *Folk Constr. Co. v. United States,* 226 Ct.Cl. 602, 604, 1981 WL 21438 (1981). Certification also serves to discourage the filing of fraudulent claims. *See Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1429 (Fed.Cir.1989).[6] Furthermore, certification is required "to deter contractors from filing inflated claims which cost the government substantial amounts to defeat." *Paul E. Lehman, Inc.,* 230 Ct.Cl. at 15, 673 F.2d at 355.

Proper certification in compliance with the CDA had long been a jurisdictional requirement in the Court of Federal Claims. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 579 (Fed.Cir.1991). With the 1992 amendments to the CDA, 41 U.S.C. § 605(c)(6) now provides a mechanism by which contractors may cure a defective certification.[7] The court consistently has construed the amended CDA to permit contractors to cure a defective certification, but not to waive the certification requirement altogether. *See Pevar Co., v. United States,* 32 Fed.Cl. 822, 825 (1995); *Sam Gray Enter., Inc. v. United States,* 32 Fed.Cl. 526, 529 (1995); *Hamza v. United States,* 31 Fed.Cl. 315, 324 (1994). However, the Federal Circuit appears recently to have waived the

certification requirement altogether. *See James M. Ellett Const. Co.,* 93 F.3d at 1545–46. As plaintiffs have failed to assert a valid claim pursuant to the CDA, the court need not seek to discern the continued validity of the pre-*Ellett* Court of Federal Claims rulings.

## II. *The merits*

Assuming that the court had subject matter jurisdiction to entertain plaintiffs' claim, defendant would be entitled to summary judgment because the scope of the sales contract does not entitle plaintiffs to the contents of the shipping and storage containers.

 Contract interpretation is a matter of law resolvable by summary judgment. *P.J. Maffei Bldg. Wrecking Corp. v. United States,* 732 F.2d 913, 916 (Fed.Cir.1984); *Shearson Lehman Hutton, Inc. v. United States,* 24 Cl.Ct. 770, 773 (1991) ("[I]ssues ... [that] are solely matters of contract interpretation ... are consequently appropriate subjects for summary judgment."), *aff'd,* 983 F.2d 1086 (Fed.Cir.1992) (citing cases); *see also Government Sys. Advisors, Inc. v. United States,* 847 F.2d 811, 812 n. 1 (Fed. Cir.1988) ("Contract interpretation is a matter of law and thus is amenable to decision on summary judgment."). When seeking to interpret the terms of a contract, the task of the court is to "interpret the provisions of the unambiguous contract ... so that the words of those provisions are given their plain and ordinary meaning." *George Hyman Const. Co. v. United States,* 832 F.2d 574, 579 (Fed.Cir.1987). The court will use an unambiguous contract's plain meaning to determine the rights and obligations of the parties. *Elden v. United States,* 223 Ct.Cl.

---

**6.** 41 U.S.C. § 604 provides:

 If a contractor is unable to support any part of his claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, he shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of his claim.

**7.** The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 907(a)(6), 106 Stat. 4506, 4518, amended the CDA so that "[a] defect in the certification of a claim shall not·deprive a court

or an agency board of contract appeals of jurisdiction over that claim." For claims filed after the act's effective date, a contractor need only correct the defective certification prior to an entry of final judgment. *See* 41 U.S.C. § 605(c)(6). Congress intended to permit contractors to "cure 'technically defective' certifications—defective as a result of innocent mistake— in order to 'avoid repetition of the entire administrative claims process and waste of judicial ... resources.' " *Hamza,* 31 Fed.Cl. at 323 (quoting H.Rep. No. 102–1006, 102d Cong., 2d Sess. 28, *reprinted in* 1992 U.S.C.C.A.N. 3921, 3937).

239, 252, 617 F.2d 254, 260–61 (1980). "A contract term is unambiguous if there is only one reasonable interpretation." *C. Sanchez & Son, Inc. v. United States,* 6 F.3d 1539, 1544 (Fed.Cir.1993).

 Defendant's first argument is that the plain meaning of the contract entered into by plaintiffs and the DRMO provided solely for the sale of shipping and storage containers. The contents of the containers were, according to defendant, beyond the scope of the sales contract.[8] In support of this contention, defendant notes that the Invitation for Bids No. 27–2834 (the "IFB") described the items in lots 42–47 purchased by plaintiffs as "shipping and storage containers: [2] EA 1 LT."[9] The Notice of Award, Statement, and Release Document (the "award notice") sent by the DRMO to plaintiffs identified the purchased merchandise in an identical manner.

 The language of both the IFB and the award notice is clear and unambiguous. Neither document makes any mention of the contents of the shipping and storage containers. "In suing for a breach of contract plaintiff must rely on the express terms of the contract and cannot, as it has attempted to do here, import into the agreement terms outside of those expressly contained in the agreement." *Texas v. United States,* 210 Ct.Cl. 522, 531, 537 F.2d 466, 471 (1976). To allow plaintiffs to claim a contractual right to the contents of the containers would be to construe the contract with a " 'twisted or strained out of context analysis.' " *Andersen Consulting v. United States,* 959 F.2d 929, 934–35 (Fed.Cir.1992) (quoting *ITT Arctic*

8. Defendant has suggested that the issue is whether the scope of the contract encompassed the sale of shipping and storage containers and helicopter transmissions, or merely the containers. The issue is more properly characterized as whether the sales contract encompassed the contents of the containers, whatever those contents may have been. Whether the provisions of the contract specifically addressed the sale of helicopter transmissions is irrelevant to the inquiry.

9. Defendant properly has noted that the IFB erroneously identified the contents of lot 47 as "shipping and storage containers: 2 EA." This error was amended by a "Waiver to Purchaser" issued to plaintiffs noting that there were in fact eight, not two, containers in that particular lot.

*Servs. Inc. v. United States,* 207 Ct.Cl. 743, 752, 524 F.2d 680, 684 (1975)). The plain unambiguous meaning of the contract of sale entered into between plaintiffs and the Government grants plaintiffs a right to the shipping and storage containers, nothing more.

 Defendant next asserts that the DRMO had no authority to auction off the contents of the shipping and storage containers. The DRMO Manual (Mar.1990) provides that the DRMO is permitted to dispose of all property that has been authorized for "turn-in." DRMO Manual, DoD 4160.21–M, ch. VI & D.1., p. VI–2. To comply with the DRMO regulations governing "turn-in" authorization, a DD Form 1348–1 must be filled out properly and submitted. DoD 4160.21–M, ch. VI § F.1., p. VI–4. This form dictates that certain minimum information pertaining to the property be provided. Among the required information are the item's national stock number (the "NSN") and English description.

The regulations thus indicate that if property submitted to the DRMO is not accompanied by a properly completed DD Form 1348–1, the DRMO has not received "turn-in" authorization and may not dispose of the property in question. In the instant case, the shipping and storage containers, later designated items 42–47, were accompanied by a DD Form 1348–1, and therefore were properly authorized for "turn-in." If the DRMO also were authorized to dispose of the contents of the containers, an additional DD Form 1348–1 must have been submitted identifying the contents and providing the appropriate NSN and English description.[10]

10. Assuming that the issue in this case concerns whether or not the DRMO was authorized to dispose of helicopter transmissions, a DD Form 1348–1 must have been submitted for such property. Even if the transmissions were sent to the DRMO in containers identical to those purchased by plaintiffs, the DD Form 1348–1 would evidence both a different NSN and English description than that of empty shipping and storage containers. Plaintiffs, however, have provided no evidence indicating the existence of such a form. On this basis the DRMO was not authorized to dispose of helicopter transmissions.

While the DRMO inadvertently disposed of the contents of the containers, the Government is not bound by the unauthorized acts of its agents. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 268 (1981). This axiomatic point holds true even if the agent is unaware of the limitations on his or her authority. *See Federal Crop Ins. Corp.,* 332 U.S. at 384, 68 S.Ct. at 3. "The claimant for money damages for breach of an express or implied in fact contract must show that the officer who supposedly made the contract has authority to obligate the appropriated funds." *Kania,* 227 Ct.Cl. at 465, 650 F.2d at 268.

In the case at bar, the DD Form 1348–1 submitted to the DRMO limited that agency's authority to disposing of shipping and storage containers. The clear and unequivocal language of the form did not provide the DRMO with the authority to dispose of the contents of the containers. In order for the DRMO to dispose of the contents of the containers, whatever they may have been, a "turn-in" form would have been required to be submitted. As a result the DRMO was not authorized to dispose of the contents of the containers, and the Government is not bound by the terms of the alleged sale. *See Hall v. United States,* 19 Cl.Ct. 558, 560, *aff'd,* 918 F.2d 187 (Fed.Cir.1990) (Table) (stating that sale was void as *ultra vires* where DRMO lacked authority to dispose of merchandise).

Had the DRMO been authorized to dispose of the contents of the containers, the sale would be void for unilateral mistake.[11] To succeed on a claim of unilateral mistake, a party must demonstrate:

(1) mistake by one party, not bearing the risk of such mistake, as to a basic assumption on which he made the contract:

(2) that has a material effect on the agreed exchange of performance; and

(a) the effect of the mistake is such that enforcement of the contract would be unconscionable; or

11. For the purposes of illustrating the components of unilateral mistake, it is now relevant to

(b) the other party to the contract has reason to know of the mistake.

*National Rural Util. Coop Finance Corp. v. United States,* 14 Cl.Ct. 130, 141 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir.1989) (citing *Restatement (Second) of Contracts* § 153 (1981)).

In the instant case, the mistake clearly was made at the time the contract was executed. Second, a mistake concerning the actual property sold involves a basic assumption of the contract. Third, the inclusion of valuable property that one party did not intend to sell has a material effect on the contract. With respect to the fourth component of the test, plaintiffs maintain that the DRMO bore the risk of inadvertently including valuable property in the containers. The Government however cannot be made to bear of risk of the transmissions being in the containers because the Government never authorized their sale. Moreover, enforcing this contract would be unconscionable in that plaintiffs paid only $1,075.00 for property worth in excess of $1 million. Defendant has satisfied the requirements of unilateral mistake.

Plaintiffs have based their cross-motion for summary judgment on 40 U.S.C. § 484(d) (1994), which provides, in pertinent part:

A deed, bill of sale, lease, or other instrument executed by or on behalf of any executive agency *purporting to transfer* title or any other interest in surplus property under this subchapter shall be conclusive evidence of compliance with the provisions of this subchapter insofar as concerns title or other interest of any bona fide grantee or transferee for value and without notice of lack of such compliance.

Plaintiffs contend that the award notice grants them title to the helicopter transmissions. Plaintiffs cited no binding authority to support their position. Instead, plaintiffs rely primarily on the case of *Pacific Harbor Capital, Inc. v. United States Dep't of Agric.,* 845 F.Supp. 1 (D.D.C.1993). Plaintiffs contend that *Pacific Harbor,* not *Hall,* controls the outcome of this case.

note that the contents of the containers were helicopter transmissions.

While no dispute exists as to the fact that plaintiffs are *bona fide* purchasers, their argument remains unavailing. By suggesting that the award notice entitles them to title of the helicopter transmissions, plaintiffs have adopted once again the same argument that the court has already rejected, namely that the scope of the sales contract encompassed the contents of the containers. This cannot be the case. The award notice clearly and unambiguously states that plaintiffs have acquired title to the shipping and storage containers, nothing more and nothing less. Had there been a dispute concerning the ownership of the containers, plaintiffs indeed may be correct that pursuant to 40 U.S.C. § 484(d) the award notice would provide conclusive evidence of title. Ownership of the containers is not in question.

*Pacific Harbor* also is distinguishable from the case at bar. In *Pacific Harbor* the bills of sale purported to transfer title to the airplanes in question. As the court noted, the bills of sale served as conclusive evidence of title to the airplanes. *Pacific Harbor*, 845 F.Supp. at 4. Plaintiffs seek to extend significantly the holding of *Pacific Harbor* to encompass valuable merchandise—in no manner connected to the property mentioned on the bill of sale—that might have been found inside the planes in question. For example, had there been valuable artwork inadvertently left inside the airplanes, under plaintiffs' theory a *bona fide* purchaser would gain title to it, as well. Such a result would be well beyond the scope of *Pacific Harbor*.

### CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss is granted. The Clerk of the Court shall enter judgment dismissing the amended complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.